SAMUEL B. AND CHARLES R. PRYOR v. B. WARREN, STONE.

The limitation of the homestead in a town or city, is not to the number, but to the value of the lots. It is not required that the lots shall adjoin or be contiguous to each other ; all that is required to entitle the property to exemption from forced sale, is, that it should be used for the convenience or uses of the head or members of the family.

The homestead exemption in a town or city does not merely include a residence, but also a place where the head or members of the family may pursue such business or avocation as may be necessary for the support and comfort of the family,—whether on adjoining or contiguous lots or not,—subject to the limitation that the valuation of all shall not exceed two thousand dollars.

Error from Kaufman. Tried below before the Hon. John H. Reagan.

Removed by change of venue from Dallas. The cause was submitted to the Judge, without a jury. The only property sold, so far as it appeared, was the one lot on the public square. The facts are stated in the Opinion.

*J. M. Crockett,* for plantiffs in error. The property in litigation was not the homestead of appellee at the time of the levy or sale.

1st. Because the appellee was not occupying any place as a homestead.

2nd. Because the lot in controversy was not, nor had at any time been used in connection with the homestead, nor was there any evidence of an intention so to use it. (See Hancock v. Morgan, and Mather v. Walker, Austin Term, 1856 ; Lee v. Kingsbury, 13 Tex. R. 68.)

*J. E. Cravens,* for defendant in error.

HEMPHILL, CH. J.   This was an action by Stone, to try the title to a lot of land in the town of Dallas.   The lot had been sold at Sheriff's sale, as the property of Stone,—and the Pryors claimed through that sale.   The plaintiff, Stone, had judgment for the lot, and for rents with some deductions which were specified.   The only important question presented by the record is, whether the lot in question was a portion of the homestead of the plaintiff, Stone, and as such exempt from forced sale.

The material facts are, that Stone, with his wife and children, occupied a house and eight lots, which he purchased shortly after his settlement in the town of Dallas, for several years, up to the death of his wife, viz : in January, 1855 ; that Stone, with his children, continued to occupy said house and eight lots for four weeks after the death of his wife ; that he then sold the most of his furniture, and rented the house and lots to one C. M. Peak ; that his children boarded in the house with Peak's family ; that Stone also boarded there, but slept in the house upon the lot which is in controversy.   Said last mentioned house had two rooms, in one of which Stone put his bed and bedding, pictures, carpet, toilet, and all the furniture necessary to fit it up as a bed room, and which had remained unsold ; that the other room was used by Stone as a law office, and had been so used by him for a year or two, he having purchased the same ; that he and children continued to live as above mentioned, until about 1st July, 1855, when he left, with his children, for Kentucky ; that during his absence the property in controversy was sold under execution ; that the house and eight lots, rented to Peak, and the property in controversy, was all the real estate owned by Stone in the town of Dallas.   It was in evidence, that the family portraits, with toilet, &c., was in the bed room in the house on the lot in suit ; that this lot, together with the other eight lots, were worth sixteen hundred dollars.   It was proven that the eight lots, upon which plaintiff had been residing during the life

time of his wife, were southeast about three blocks from the public square of the town of Dallas, and that the lot in controversy is on the public square, and on the north side.

By the Constitution, Sec. 22, Art. 7, it is declared, that the homestead of a family, not to exceed two hundred acres of land, (not included in a town or city,) or any town or city lots, not to exceed in value two thousand dollars, shall not be subject to forced sale.

From the latter part of this citation, it appears that the limitation of the homestead, in a town, is not to the number but to the value of the lots. It is not declared that the lots shall adjoin or be contiguous to each other ; all that, by fair construction of the language, is required to entitle the property to exemption, is, that the property should be used for the convenience or uses of the head or members of the family. The exemption should not be construed as reserving merely a residence where a family may eat, drink and sleep, but also a place where the head or members may pursue such business or avocation as may be necessary for the support and comfort of the family. The office of a lawyer or shop of a mechanic is necessary to the convenience and success of their respective profession or trade, but it would frequently be of much inconvenience and detriment that this shop or office should be part of the same building or even on the same lot with the residence of the family. The exemption is not thus to be restricted in its benefits. It allows any number of lots, not to exceed two thousand dollars, and it cannot be material how many or how far or how near or remote from each other, may be the lots occupied for the convenience of the family, and for the prosecution of the business or employment of its head or members. See Hamilton & Hancock v . Morgan and wife, and Methery v. Walker, decided at Austin, 1856. (17 Tex. R. 582 ; Id. 593.)

The exemption would have included the lot, had the house been merely an office ; but it was more. One room was occu-

pied by the plaintiff as his bed room, the depository of the family portraits and remaining furniture. To this extent it was his actual residence, and its claim, as such, to exemption cannot be questioned.

The property seems to have belonged to the community goods existing between the plaintiff and his deceased wife, and her heirs have an interest in the same. But the homestead character of the property was not extinguished by the death of the wife. That would remain in its integrity and entirety, as against creditors of the survivor or of the community, and even, it would seem, against the heirs of the wife, until division of the community estate; and especially would this be the rule where the heirs of the wife are the children of the marriage, are minors and with their surviving father constitute the family.

Nor was the exemption lost by the fact of the residence and eight lots being rented. It does not appear that there was any intention to abandon the place as a homestead,—or that the renting was for any purpose other than temporary convenience.

It is in proof that the plaintiff, with his children left for Kentucky, and though it is not stated that he or they returned, yet this is to be inferred from the record. The property, it is said, was sold during his absence, thus producing the impression that he left on a visit which was temporary, and that he had returned. Of course such absence could not affect the character of the property as a homestead.

We are of opinion that there was no error, and that judgment be affirmed.

Judgment affirmed.